# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SECRETARY OF U.S. DEPARTMENT OF LABOR, | CASE NO. 1:19-CV-00968 |
| Plaintiff, | JUDGE PAMELA A. BARKER |
| -vs- | |
| ROBERT KAVALEC, et al., | MEMORANDUM OF OPINION AND ORDER |
| Defendants. | |

This matter comes before the Court upon several Motions to Strike of Plaintiff Eugene Scalia, Secretary of Labor (the "Secretary"), United States Department of Labor. (Doc. Nos. 17, 23, 42.) The Secretary has moved to strike the jury demand and certain affirmative defenses of Defendants/Third-Party Plaintiffs Robert Kavalec, Charles Alferio ("Alferio"), Victor Collova ("Collova"), the Board of Trustees of the Fleet Owners Insurance Fund (the "Board"), and the Fleet Owners Insurance Fund (the "Plan") (collectively, "Defendants"). (*Id.*)

For the following reasons, the Secretary's Motions to Strike (Doc. Nos. 17, 23, 42) are GRANTED IN PART and DENIED IN PART.

## I. Background

On April 30, 2019, the Secretary filed a Complaint against Defendants in this Court, setting forth claims for violations of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Doc. No. 1.) The Secretary alleges that Kavalec, Alferio, Collova, and the

Board, as fiduciaries of the Plan,[1] violated several provisions of ERISA by, among other things, authorizing the payment of their own compensation and personal expenses by the Plan, allowing an ineligible person to participate in the Plan, and administering the Plan in violation of the Health Insurance Portability and Accountability Act and the Affordable Care Act. (*Id.* at ¶¶ 22-96.) The Secretary seeks a variety of remedies pursuant to ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), such as an order permanently enjoining Defendants from serving as fiduciaries to ERISA-covered plans and the restoration to the Plan of all losses caused by Defendants' breaches of duty. (*Id.* at Pgs. 22-23.)

Defendants filed separate Answers to the Complaint, in which they each asserted third-party claims against Third-Party Defendant Medical Mutual Services, LLC ("MMS"), set forth a variety of affirmative defenses, and demanded a jury trial. (Doc. Nos. 5, 20, 21, 32.) In response, the Secretary moved to strike the jury demand and certain affirmative defenses asserted in Defendants' respective Answers pursuant to Fed. R. Civ. P. 12(f). (Doc. Nos. 17, 23, 42.) Specifically, on July 11, 2019, the Secretary filed a Motion to Strike the jury demand and certain affirmative defenses of Robert Kavalec, in his capacity as employee Administrator and not as Trustee, the Board, and the Plan (collectively, the "Board Defendants"). (Doc. No. 17.) The Board Defendants filed a brief in opposition to the Secretary's Motion to Strike on July 16, 2019, to which the Secretary replied on July 22, 2019. (Doc. Nos. 18, 22.) On July 31, 2019, the Secretary also filed a Motion to Strike the jury demand and certain affirmative defense of Robert Kavalec, in his individual capacity ("Kavalec"), and Alferio. (Doc. No. 23.) Neither Kavalec nor Alferio responded to the Secretary's

---

[1] The Secretary does not allege any violations by the Plan or seek any relief from the Plan. Rather, the Secretary named the Plan as a defendant pursuant to Fed. R. Civ. P. 19(a) to assure complete relief can be granted. (Doc. No. 17 at 2 n.2.)

2

Motion. Finally, on September 25, 2019, the Secretary filed a Motion to Strike the jury demand and certain affirmative defenses of Collova. (Doc. No. 42.) Collova also has failed to respond in a timely manner.[2] As such, each of the Secretary's Motions to Strike is ripe for consideration.

## II. Standard of Review

Fed. R. Civ. P 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike under Rule 12(f) are addressed to the sound discretion of the trial court." *Chiancone v. City of Akron*, No. 5:11CV337, 2011 WL 4436587, at *2 (N.D. Ohio Sept. 23, 2011). However, such motions "are viewed with disfavor and are not frequently granted." *Operating Engineers Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). Indeed, the Sixth Circuit has previously indicated that "the action of striking a pleading should be sparingly used by the courts," "resorted to only when required for the purposes of justice," and "only when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). "On the other hand, motions to strike 'serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case.'" *United States v. Pretty Prod., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (quoting *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989)).

---

[2] On October 17, 2019, Collova requested an extension of time to respond to the Secretary's Motion to Strike until November 26, 2019, which the Court granted. (Doc. No. 49.) Subsequently, on November 1, 2019, the Court stayed the case until March 1, 2020. (Doc. No. 50.) Collova failed to file a response or request for an additional extension of time after the stay expired.

**III. Analysis**

    **a. Jury Demand**

The Secretary seeks to strike Defendants' jury demands with respect to the Secretary's ERISA claims, asserting that his claims under ERISA are equitable, and therefore, Defendants have no right to a jury trial. (Doc. No. 17 at 3-8; Doc. No. 23 at 3; Doc. No. 42 at 3.)[3] In response, the Board Defendants argue that the Secretary's attempt to "claw back" Defendants' wages is not equitable in nature. (Doc. No. 18 at 3-4.) The Court finds that Defendants have no right to a jury trial with respect to the Secretary's ERISA claims and will thus grant the Secretary's Motions to Strike in this regard.

Pursuant to Fed. R. Civ. P. 39(a), when a jury trial has been demanded, "[t]he trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." "Trial by jury is permitted if a right to one exists either by statute or by the Seventh Amendment." *In re Iron Workers Local 25 Pension Fund*, Nos. 04–cv–40243, 07–cv–12368, 2011 WL 1256657, at *15 (E.D. Mich. Mar. 31, 2011). With regard to a statutory right in this case, it is clear that "ERISA itself does not make any provision for a jury trial." *Turner v. CF & I Steel Corp.*, 770 F.2d 43, 46 (3d Cir. 1985). Thus, Defendants must show that the Seventh Amendment provides them the right to a jury trial.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. "The phrase 'common law,' does not, however, mean 'merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be

---

[3] Defendants also have requested a jury trial with respect to their third-party claims against MMS. (Doc. No. 17 at 3 n.3.) The Secretary only seeks to strike Defendants' jury demands with respect to his ERISA claims.

4

ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Wilson v. Big Sandy Health Care, Inc.*, 576 F.3d 329, 332 (6th Cir. 2009) (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). Thus, to determine whether the right to a jury trial exists, courts must assess whether a "case will resolve legal rights, or only equitable rights." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 659 (6th Cir. 1996). To do so, courts engage in a two-part inquiry. "[T]he Court must examine both the nature of the action and of the remedy sought. First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417-18 (1987) (internal citations omitted). "The second stage of this analysis is more important than the first." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).

With regard to the first part of the inquiry, courts have held that "ERISA law is closely analogous to the law of trusts, an area within the exclusive jurisdiction of the courts of equity." *In re Iron Workers*, 2011 WL 1256657, at *15 (quoting *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994)); *Ramos v. Banner Health*, No. 15-cv-2556-WJM-NRN, 2019 WL 1558069, at *2 (D. Colo. Apr. 10, 2019) ("An 'ERISA action is analogous to a trust action and therefore equitable in nature.'") (quoting *Adams v. Cyprus Amax Minerals Co.*, 149 F.3d 1156, 1161 (10th Cir. 1998)); *see also Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993) ("[A]t common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust."). Accordingly, an action under ERISA for breach of fiduciary duties is an equitable action to which there is generally no right to a jury trial. *E.g.*, *Sprague v. General Motors Corp.*, 133 F.3d 388, 406 (6th Cir. 1998) ("Although the plaintiffs sought a jury trial on their ERISA claims, our circuit

5

precedent teaches that they were not entitled to one."); *Little v. UNUMProvident Corp.*, 196 F. Supp. 2d 659, 672-73 (S.D. Ohio 2002) (holding "plaintiff has no right to a jury trial on her ERISA claims" for "recovery of benefits denied under the policies and for breach of fiduciary duty"); *George v. Kraft Foods Global, Inc.*, Nos. 07 C 1713, 07 C 1954, 2008 WL 780629, at *2 (N.D. Ill. Mar. 20, 2008).

Here, the Secretary alleges that Defendants breached their fiduciary duties under ERISA in a variety of ways. As such, the Secretary's ERISA claims are the kind of claims that would have been brought in a court of equity, not a court of law, and the first prong of the test weighs against Defendants' demands for a jury trial with respect to the Secretary's ERISA claims.

In addition, the remedies requested by the Secretary for Defendants' alleged fiduciary breaches are equitable in nature. First, the Secretary requests an order (1) "[p]ermanently enjoining all Defendants from violating the provisions of Title I of ERISA;" (2) "[p]ermanently enjoining Kavalec, Alferio, and Collova from serving as fiduciaries or service providers to any ERISA-covered Plan;" and (3) "[r]emoving Kavalec as a fiduciary to the Plan and appointing an independent fiduciary to administer the Plan and to re-adjudicate all claims denied by the Plan in connection with the foregoing violations of ERISA and its regulations." (Doc. No. 1 at Pg. 22.) Such injunctive relief clearly is equitable in nature. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 440 (2011).

The Secretary also generally requests the restoration by Defendants to the Plan of all losses caused by the fiduciaries' breaches of duty. (Doc. No. 1 at Pgs. 22-23.) The Board Defendants argue that this would include the return of certain wages Defendants received from the Plan, as the Secretary alleges that Defendants engaged in prohibited transactions and breached their fiduciary duties by authorizing the payment of their own compensation by the Plan. (Doc. No. 18 at 3-4; Doc. No. 22 at 2-3.) The Board Defendants assert that the Secretary's request for this type of monetary relief means

that they are entitled to a jury trial under the Seventh Amendment. (Doc. No. 18 at 3-4.) The Court disagrees.

In the ERISA context, the Supreme Court has held that "the fact that . . . relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." *Amara*, 563 U.S. at 441. This is because "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* As such, numerous courts have found that there was no right to a jury trial with respect to ERISA claims even when the plaintiffs sought to hold the defendants responsible for monetary losses that resulted from the breach of their fiduciary duties. *E.g.*, *Ramos*, 2019 WL 1558069, at *3 ("Here, Plaintiffs' claim for a monetary award depends on a finding that Defendants breached their fiduciary duties, an issue within the Court's equitable domain."); *Tracey v. Massachusetts Inst. of Tech.*, No. 16-11620-NMG, 2019 WL 1005488, at *3 (D. Mass. Feb. 28, 2019) ("Merely because a plaintiff seeks a monetary remedy, however, does not require that the action be viewed as legal rather than equitable in nature."); *In re Iron Workers*, 2011 WL 1256657, at *17 ("[A]ny claim for money Plaintiffs make against Trustees for breach of their fiduciary duties is not one at law, but rather one in equity.").

Likewise, here, the Secretary seeks to require Defendants to make good to the Plan any losses resulting from fiduciary breaches committed by them or for which they are liable as provided for in ERISA § 409. *See* 29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use

7

of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."). As a result, the Secretary's requested remedies with respect to its ERISA claims, including the repayment of the Plan's losses, are equitable in nature. Therefore, Defendants have no constitutional right to a jury trial, and the Court will strike Defendants' jury demands as to the Secretary's ERISA claims.

### b. Affirmative Defenses

Before considering the Secretary's Motions to Strike several of Defendants' affirmative defenses, the Court must address the relevant standard with respect to pleading an affirmative defense. The Sixth Circuit has not ruled on the question of whether the heightened pleading standard described in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Iqbal v. Ashcroft*, 556 U.S. 662 (2009) applies to affirmative defenses, and district courts are split on the issue. *See Jam Tire, Inc. v. Harbin*, No. 3:14–cv–00489, 2014 WL 4388286, at *2 (N.D. Ohio Sept. 5, 2014) (collecting cases). The majority of lower courts, however, have held that the *Iqbal* and *Twombly* pleading requirements do not apply to affirmative defenses. *Id.*

The Court agrees with the majority approach for several reasons. First, in *Iqbal* and *Twombly*, the Supreme Court was interpreting Fed. R. Civ. P 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which does not apply to affirmative defenses. *See Iqbal*, 556 U.S. at 677-78; *Twombly*, 550 U.S. at 555. In addition, a less restrictive standard is supported by important policy considerations:

> Although a plaintiff may have latitude in the timing of the filing of his complaint, Rule 12(a)(1) requires a defendant to respond to it within 21 days. Furthermore, "[f]ailure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense." *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004). (Citation omitted). A defendant is required to respond to allegations, often very serious allegations, without the benefit of discovery. To apply a plausibility

8

standard to affirmative defenses would place an unrealistic burden on defendants irreconcilable with the plain meaning of Rule 8(c) and the overriding consideration that pleadings "must be construed so as to do justice." Fed.R.Civ.P. (8)(e).

*Jam Tire*, 2014 WL 4388286, at *2. Finally, while the Sixth Circuit has never directly addressed the issue, a less restrictive pleading standard coincides with the Sixth Circuit's general treatment of affirmative defenses, as the Sixth Circuit has held that "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006) (citation omitted).

As such, to survive a motion to strike, an affirmative defense need only provide "fair notice of the nature of the defense." *Id.* "[G]eneral or boilerplate defenses are acceptable, even if they lack factual specificity, so long as it remains possible that the defenses relate to the claim at hand." *Fed. Trade Comm'n v. Stratford Career Inst.*, No. 16-CV-371, 2016 WL 3769187, at *2 (N.D. Ohio July 15, 2016). On the other hand, a defense may be struck as "insufficient if, as a matter of law, the defense cannot succeed under any circumstances or has 'no possible relation to the controversy.'" *Id.* (quoting *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822). In other words, if "the relevant legal standard for the defense makes the affirmative defense completely inapplicable, then the defense must be struck." *Id.*

### i. Failure to Join a Necessary Party

First, the Secretary seeks to strike each Defendant's affirmative defense of failure to join a necessary party. (Doc. No. 17 at 8-9; Doc. No. 23 at 3-4; Doc. No. 42 at 3-4.) In their Answers, Kavalec, Alferio, and Collova all specifically identify MMS as the necessary party on which their defense is based. (Doc. No. 20 at ¶ 100; Doc. No. 21 at ¶ 100; Doc. No. 32 at ¶ 100.) Because MMS has been made a party to this action by Defendants' third-party claims, the Court finds Kavalec,

9

Alferio, and Collova's defenses inapplicable to this case. The Court will thus grant the Secretary's Motions to Strike with respect to their affirmative defenses based on the Secretary's failure to join MMS as a necessary party.

However, in the Board Defendants' Answer, their affirmative defense is not limited to MMS. (Doc. No. 5 at ¶ 100 ("Plaintiff did not join parties necessary for the court to accord complete relief as required by Federal Rule of Civil Procedure 19(a)(1)(A).").) Because the Board Defendants' defense is not limited to MMS, the Secretary has not shown that the defense has no possible relation to this case, as there may be additional third parties besides MMS on which the Board Defendants could base their affirmative defense. While the Secretary attacks the sufficiency of the Board Defendants' defense for failing, among other things, to identify the necessary party, such details are not necessary to survive a motion to strike at this stage. *See Vary v. City of Cleveland*, No. 1:16-CV-00037, 2016 WL 3085311, at *3 (N.D. Ohio June 2, 2016) ("Plaintiff argues that the Court must strike these defenses because they do not identify who caused the injury, who intervened, or who is a necessary party. But Defendant is correct that it need not make such a showing at this stage. Defendant need only meet fair notice, and it has properly made Plaintiff aware of its intention to investigate third parties who may be involved."). As such, the Court will deny the Secretary's Motion to Strike with regard to the Board Defendants' affirmative defense of failure to join a necessary party.

### ii. Failure to Mitigate Damages

Next, the Secretary moves to strike the affirmative defense of failure to mitigate damages asserted by the Board Defendants, Kavalec, and Alferio. (Doc. No. 17 at 9; Doc. No. 23 at 4.) The Secretary argues that the defense is inapplicable to an ERISA enforcement action brought by the Secretary, as the injury alleged is not an injury to the Secretary, but rather an injury to the participants

and beneficiaries of the Plan. (Doc. No. 17 at 9.) The Board Defendants do not directly address this argument. Instead, they appear to assert that the Secretary should have worked with Defendants to help them resolve any violations before bringing suit. (Doc. No. 18 at 5.)

The Court agrees with the Secretary that his failure to mitigate damages has no possible relation to this action. *See Perez v. PBI Bank, Inc.*, No. 1:14–cv–01429–SEB–MJD, 2015 WL 500874, at *10 (S.D. Ind. Feb. 4, 2015) (striking failure to mitigate damages defense in ERISA action because "failure to mitigate is inapplicable to the Secretary's action"); *Chao v. Wheeler*, No. 3:05-CV-763 RM, 2007 WL 4233464, at *9 (N.D. Ind. Nov. 28, 2007) ("Absent any clear authority establishing a failure to mitigate damages defense to an action by the Secretary to enforce ERISA provisions and in light of the inconsistency of such a defense to the primary purposes of ERISA, the court can't agree with Mr. Kile that the Department of Labor had a duty to mitigate its damages or is responsible for Mr. Kile's liability to the Gallery Graphics 401(k) Plan."). Accordingly, the Court will strike the affirmative defense of failure to mitigate damages in the Answers of the Board Defendants, Kavalec, and Alferio.

### iii. Estoppel

The Secretary alleges that Defendants' estoppel defenses should be stricken because Defendants failed to allege facts sufficient to support their respective estoppel defenses. (Doc. No. 17 at 10; Doc. No. 23 at 4-5; Doc. No. 42 at 6.) The Court finds that striking Defendants' estoppel defenses on this basis is inappropriate at this time.

As noted above, "general or boilerplate defenses are acceptable, even if they lack factual specificity, so long as it remains possible that the defenses relate to the claim at hand." *Fed. Trade Comm'n*, 2016 WL 3769187, at *2. Accordingly, "[a]ffirmative defenses do not have to specify all

11

of the conduct or facts that gives rise to the defense." *Leligdon v. McDonald*, No. 1:14 CV 2810, 2016 WL 10590098, at \*11 (N.D. Ohio Nov. 21, 2016). For example, in *Jam Tire*, the defendant asserted in his answer that "Plaintiff's Complaint is barred by the doctrines of waiver and estoppel." 2014 WL 4388286, at \*1. The court denied the plaintiff's motion to strike the affirmative defense because the defendant was "required merely to state his affirmative defenses." *Id.* at \*4.

Here, the Secretary seeks to strike Defendants' estoppel defenses because they have not asserted sufficient facts to support each element of the defense. However, such an analysis is not appropriate at this stage. The Secretary has not demonstrated that Defendants' estoppel defenses are completely inapplicable to the present action, and the Court finds that Defendants have adequately raised the defense in their respective Answers. Therefore, the Secretary's Motions to Strike are denied with respect to Defendants' affirmative defenses of estoppel.[4]

### iv. Laches

The Secretary also moves to strike the Board Defendants and Collova's laches defenses, asserting that the government is exempt from the defense. (Doc. No. 17 at 10-11; Doc. No. 42 at 7.) In response to the Secretary's Motion, the Board Defendants voluntarily waived their affirmative defense of laches. (Doc. No. 18 at 6.) As such, the Court grants the Secretary's Motion to Strike the Board Defendants' laches defense. However, the Court must still assess the sufficiency of the defense with respect to Collova, who has not filed a response.

---

[4] In their Answers, Kavalec and Alferio also assert that "Plaintiffs claims are barred by the misrepresentations and fraud committed by the officials of the Plaintiff in conducting its audit." (Doc. No. 20 at ¶ 108; Doc. No. 21 at ¶ 108.) In its Motion to Strike, the Secretary treats this statement as an alternate formulation of Kavalec and Alferio's estoppel defenses. (Doc. No. 23 at 5-6.) The Court denies the Secretary's Motion to Strike this allegation for the same reasons discussed with respect to Defendants' estoppel defenses.

12

"It is well established that the Government generally is exempt from the consequences of its laches." *Hatchett v. United States*, 330 F.3d 875, 887 (6th Cir. 2003). Thus, courts have held the defense of laches to be "unavailable as a defense against the government in an ERISA enforcement action brought by the Secretary of Labor against plan fiduciaries." *Chao v. Chermak*, No. 1:05CV1935, 2006 WL 3751191, at *2 (N.D. Ohio Dec. 18, 2006); *accord First Bank Sys., Inc. v. Martin*, 782 F. Supp. 425, 427 (D. Minn. 1991) ("The court, therefore, rejects FBS's argument that laches may be applied against the Secretary in this action."). Accordingly, the Court finds laches is completely inapplicable to this case as applied to the Secretary, and will strike the defense of laches asserted by the Board Defendants and Collova.

### v. Waiver

The Secretary has moved to strike the affirmative defense of waiver from the Board Defendants' and Collova's respective Answers. (Doc. No. 17 at 11; Doc. No. 42 at 4-5.) In response, the Board Defendants voluntarily waived this affirmative defense. (Doc. No. 18 at 6.) As such, the Court grants the Secretary's Motion to Strike the Board Defendants' waiver defense.

Collova has not withdrawn his defense, however, and the Court finds striking his defense is not appropriate. The Secretary asserts Collova's waiver defense should be stricken because he has not alleged sufficient facts to support his defense. (Doc. No. 42 at 4-5.) But as discussed above with respect to estoppel, this is not an adequate basis on which to strike an affirmative defense at this stage. To support its Motion to Strike, the Secretary was required to show that waiver has no possible relation to this suit, which he has not done. Accordingly, the Secretary's Motion to Strike Collova's waiver defense is denied.

### vi. Premature Filing

In their Answers, the Board Defendants, Kavalec, and Alferio assert an affirmative defense alleging that the Secretary's Complaint was "filed prematurely and in violation of the Tolling Agreement." (Doc. No. 5 at ¶ 107; Doc. No. 20 at ¶ 105; Doc. No. 21 at ¶ 105.) The Secretary argues this defense should be stricken because it is contradicted by the plain terms of that document. (Doc. No. 17 at 11-12; Doc. No. 23 at 6.) In response, the Board Defendants voluntarily waived this affirmative defense. (Doc. No. 18 at 6.) As such, the Court grants the Secretary's Motion to Strike the Board Defendants' premature filing defense. However, the Court must still assess the sufficiency of the defense with respect to Kavalec and Alferio, who have not filed a response.

In December 2017, the parties to this case entered into a First Waiver of and Agreement to Toll Limitations Periods and Other Timeliness Defenses ("Tolling Agreement"). (Doc. No. 17-1.)[5] The Tolling Agreement tolled the statute of limitations for the Secretary's claims from December 14, 2017 through April 30, 2019. (*Id.* at 2.) The Secretary filed his complaint on April 30, 2019. (Doc. No. 1.) Thus, under the plain language of the Tolling Agreement, the Secretary did not file prematurely, but rather, filed on the last possible day before the Tolling Agreement expired. Accordingly, the affirmative defense that the Secretary filed his Complaint prematurely under the Tolling Agreement cannot succeed under any circumstances, and the Court grants the Secretary's Motions to Strike in this regard.

---

[5] Because the Tolling Agreement is referred to in the Answers of the Board Defendants, Kavalec, and Alferio and is integral to this affirmative defense, it may be considered by the Court. *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

### vii. Consent

Collova is the only Defendant to raise the affirmative defense of consent, asserting that the Secretary "has known about the Plan and its structure since the Plan's establishment in 1953" and "approved the Trust Agreement that authorized the conduct alleged in the Complaint." (Doc. No. 32 at ¶ 105.) Citing *Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894 (N.D. Ohio 2003), the Secretary argues that Collova's affirmative defense of consent is legally deficient. (Doc. No. 42 at 5-6.) However, the Court finds *Williams* distinguishable. In that case, the defendant admitted that its conduct violated the guidelines that governed the relevant ERISA plan. *Williams*, 279 F. Supp. 2d at 906-07. In contrast, in this case, Collova appears to deny that his conduct violated any requirements under the Plan and asserts that his conduct was authorized by the Trust Agreement. Moreover, in *Williams*, the defendant argued that the plan's trustees consented to its conduct because they were aware of or approved the conduct, *Williams*, 279 F. Supp. 2d at 907, whereas here, Collova contends that the Secretary—who is charged with enforcing ERISA—approved the Trust Agreement that authorized his conduct. As a result, in the absence of a more developed record and further legal argument, the Court declines to find that Collova's defense is legally deficient at this time, and denies the Secretary's request to strike Collova's affirmative defense of consent.

### viii. Unclean Hands

Finally, the Secretary requests that the Court strike Collova's unclean hands defense on the basis that it is unavailable as a defense against the Secretary in these circumstances, as the Secretary's action is not for his own benefit, but for the benefit of the Plan and its participants. (Doc. No. 42 at 7-8.) The Court agrees.

"The concept of unclean hands may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995) (quoting *Novus Franchising, Inc. v. Taylor*, 795 F. Supp. 122, 126 (M.D. Pa. 1992)). In *McLemore v. Regions Bank*, the Sixth Circuit rejected the defendant's attempt to raise an unclean hands defense against a trustee suing on behalf of ERISA plans because the "ERISA plans are innocent of any wrongdoing" and "any recovery would benefit only the defrauded plans, such that barring the claims serves no deterring function." 682 F.3d 414, 421-22 (6th Cir. 2012). The same logic applies to the Secretary's action to benefit the Plan and its participants. In addition, "there are substantial policy considerations militating against inhibiting the enforcement of an important regulatory scheme based on some alleged 'unclean hands' of the agency charged with the enforcement." *Donovan v. Robbins*, 99 F.R.D. 593, 600 (N.D. Ill. 1983) (striking unclean hands defense in ERISA action by Secretary). As such, the Court finds an affirmative defense based on the Secretary's alleged unclean hands has no possible relation to this action, and striking the defense is warranted.

## IV. Conclusion

For the reasons set forth above, the Secretary's Motions to Strike are GRANTED IN PART and DENIED IN PART, as follows:

    a. With respect to the Secretary's Motion to Strike the jury demand and certain affirmative defenses of the Board Defendants (Doc. No. 17), the Court strikes (1) the Board Defendants' jury demand as to the Secretary's ERISA claims; and (2) the affirmative defenses in paragraphs 103, 104 (with respect to the affirmative defenses

of laches and waiver only), and 107 of the Board Defendants' Answer.  The Motion is denied in all other respects.

b. With respect to the Secretary's Motion to Strike the jury demand and certain affirmative defenses of Kavalec and Alferio (Doc. No. 23), the Court strikes (1) Kavalec's jury demand as to the Secretary's ERISA claims; (2) Alferio's jury demand as to the Secretary's ERISA claims; (3) the affirmative defenses in paragraphs 100, 103, and 105 of Kavalec's Answer; and (4) the affirmative defenses in paragraphs 100, 103, and 105 of Alferio's Answer.  The Motion is denied in all other respects.

c. With respect to the Secretary's Motion to Strike the jury demand and certain affirmative defenses of Collova (Doc. No. 42), the Court strikes (1) Collova's jury demand as to the Secretary's ERISA claims; and (2) the affirmative defenses in paragraphs 100 and 105 (with respect to the affirmative defenses of laches and unclean hands only) of Collova's Answer.  The Motion is denied in all other respects.

**IT IS SO ORDERED.**

Date:  April 7, 2020

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE