IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SECRETARY OF U.S. DEPARTMENT OF LABOR, | CASE NO. 1:19-CV-00968 |
| Plaintiff, | JUDGE PAMELA A. BARKER |
| -vs- | |
| ROBERT KAVALEC, et al., | MEMORANDUM OF OPINION AND ORDER |
| Defendants. | |

This matter comes before the Court upon the Motions to Dismiss of Third-Party Defendant Medical Mutual Services ("MMS") in which MMS has moved to dismiss the Third-Party Complaints of Defendants/Third-Party Plaintiffs Robert Kavalec ("Kavalec"), Charles Alferio ("Alferio"), Victor Collova ("Collova"), the Board of Trustees of the Fleet Owners Insurance Fund (the "Board"), and the Fleet Owners Insurance Fund (the "Fund") (collectively, "Defendants"). (Doc. Nos. 28, 33.) For the following reasons, MMS's Motions to Dismiss are GRANTED.

**I. Background**

    **a. Factual Background**

The Fund is an employee benefit plan within the meaning of ERISA. (Doc. No. 1 at ¶ 3.) Kavalec, Alferio, and Collova all either served or continue to serve as Trustees of the Fund. (*Id.* at ¶¶ 12-14.) For over twenty years, Defendants contracted MMS to serve as the Fund's exclusive claims adjuster. (Doc. No. 5 at ¶ 139; Doc. No. 20 at ¶ 138; Doc. No. 21 at ¶ 138; Doc. No. 32 at ¶

137.)[1]  In that role, MMS was responsible for implementing the Fund's benefit books and adjusting all provider claims for services to the Fund's covered members and their beneficiaries. (Doc. No. 5 at ¶ 118-19.)

Defendants also submitted all plan revisions to MMS prior to implementation by MMS. (*Id.* at ¶ 120.) MMS consistently commented on and proposed changes in the language of these revisions. (*Id.* at ¶ 121.) Defendants made changes to proposed plan revisions as a result of MMS's comments and relied on MMS's expertise regarding compliance with the Health Insurance Portability and Accountability Act ("HIPAA"), the Patient Protection and Affordable Care Act ("ACA"), and other federal healthcare laws. (*Id.* at ¶¶ 114, 122-23.)

However, pursuant to the Third-Party Administrative Services Agreement (the "TPA Agreement") between MMS and the Fund, the Fund, as the Plan Sponsor, was responsible for determining the benefits offered to participants of the plan and the eligibility requirements for such benefits. (*See* Doc. No. 30-1 at 3, 6.)[2]  While MMS had the right to review benefit books and plan descriptions to ensure the plan's benefits could be implemented through its claims processing procedure, MMS had no right or authority with respect to the preparation or selection of benefits under the plan, as provided in Sections 3.1 and 3.2 of the TPA:

---

[1] Allegations contained in Defendants' Third-Party Complaints are assumed to be true for purposes of ruling on MMS's Motions to Dismiss only. Defendants' Third-Party Complaints contain the same claims and are based on the same allegations. For ease of reference, due to slight variations in the exact numbering of paragraphs, however, the Court cites only to the Fund's and the Board's Third-Party Complaint throughout the rest of the opinion.

[2] Although the TPA Agreement was not attached to Defendants' Third-Party Complaints, the Court may consider it because it is referred to in Defendants' Third-Party Complaints and central to their claims. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) ("This circuit has further held that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (internal quotations and citations omitted).

> **Section 3.1**
> *The Plan Sponsor is solely responsible for establishing and maintaining the Plan.* The Plan Sponsor agrees that the Plan shall contain any provisions that are necessary to cause the Plan to be consistent with the provider network contracts. *The Plan Sponsor shall be solely responsible for the final content of the Plan and any Summary Plan Description prepared by the Plan Sponsor*, except that any references in the documents to Contracting Providers or to Medical Mutual Services or the network or services provided by Medical Mutual Services or the network must be approved in writing by Medical Mutual Services or the network before any distribution of the documents, including distribution to Covered Persons.
>
> **Section 3.2**
> *The Plan Sponsor shall provide Medical Mutual Services with copies of the Summary Plan Description and amendments thereto in a timely manner after adoption and execution of the same. The Plan Sponsor agrees that Benefit Books may be reviewed by Medical Mutual Services to ensure compliance with Medical Mutual Services' claims processing procedures. The Plan may be amended by the Plan Sponsor at its discretion.* The Plan Sponsor shall give Medical Mutual Services written notice of any such amendment at least sixty (60) days before its effective date. It is the Plan Sponsor's obligation to notify Participants of any changes and the effective dates thereof and provide any required Summary of Material Modification. Any change in the nature of the services provided by Medical Mutual Services under this Agreement that would be caused by their amendment, must be approved in writing by Medical Mutual Services for the change in services to be included under this Agreement. Any such approved change shall also be a basis for Medical Mutual Services to request re-negotiation of the fee paid to Medical Mutual Services by the Plan Sponsor.

(*Id.* at 6 (emphasis added).)

The TPA Agreement expressly provided that the only fiduciary duty MMS assumed under the plan was with respect to claim administration and appeals conducted by MMS:

> **Section 5.2**
> The parties agree that Medical Mutual Services, when performing its obligations under this Agreement, is not the Plan Sponsor or administrator as those terms are defined in the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"). *In performing its obligations under the Agreement, Medical Mutual Services is a fiduciary only to the extent that it exercises discretion in administering claims to the extent allowed by ERISA.*

(*Id.* at 9 (emphasis added).) However, the Fund retained sole discretion on whether any particular claim should be paid, as Section 5.7 provides: "The Plan Sponsor shall have the exclusive right to

3

interpret the terms of the Benefit Book(s) and any Amendments. The decision about whether to pay any claim, in whole or in part, is within the sole discretion of the Plan Sponsor and such decisions shall be final and conclusive, subject to any appeals process as outlined in the Benefit Book(s)." (*Id.* at 10.)

### b. Procedural History

On April 30, 2019, Plaintiff Secretary of Labor (the "Secretary"), United States Department of Labor, filed a Complaint against Defendants, setting forth claims for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Doc. No. 1.) The Secretary alleges that Kavalec, Alferio, Collova, and the Board, as fiduciaries of the Fund,[3] violated several provisions of ERISA by, among other things, authorizing the payment of their own compensation and personal expenses by the Fund, allowing an ineligible person to participate in the Fund, and administering the Fund in violation of HIPAA and ACA. (*Id.* at ¶¶ 22-96.)

Subsequently, Defendants all filed Third-Party Complaints against MMS, seeking to hold MMS responsible for the HIPAA and ACA violations alleged by the Secretary. (Doc. Nos. 5, 20, 21, 32.) Specifically, Defendants assert three claims against MMS: (1) breach of fiduciary duty under ERISA for alleged violations of HIPAA, (2) breach of fiduciary duty under ERISA for alleged violations of ACA, and (3) breach of contract. (Doc. No. 5 at ¶¶ 124-47.)

On August 15, 2019, MMS filed a Motion to Dismiss the Third-Party Complaints of the Board, the Fund, Kavalec, and Alferio. (Doc. No. 28.) On August 26, 2019, several days after Collova filed his Third-Party Complaint, MMS also moved to dismiss Collova's Third-Party

---

[3] The Secretary does not allege any violations by the Fund or seek any relief from the Fund. Rather, the Secretary named the Fund as a defendant pursuant to Fed. R. Civ. P. 19(a) to assure complete relief can be granted. (Doc. No. 17 at 2 n.2.)

4

Complaint on the same bases asserted with respect to the other Defendants. (Doc. No. 33.) MMS's Motions to Dismiss are unopposed, as Defendants have failed to file any response to MMS's Motions, despite the deadline to do so having long since passed.

## II. Standard of Review

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires

only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).[4] However, this liberal pleading standard for pro se litigants "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Courts "are not obligated to conjure allegations on a *pro se* litigant's behalf." *Spurling v. Trinity Servs. Grp., Inc.*, No. 4:19CV2872, 2020 WL 1862674, at *2 (N.D. Ohio Apr. 14, 2020).

**III.   Analysis**

    **a.  Counts I and II**

In Counts I and II of their Third-Party Complaints, Defendants allege that MMS breached its fiduciary duties under ERISA to the extent that the health and welfare plan implemented by Defendants failed to comply with HIPAA and ACA. (Doc. No. 5 at ¶¶ 124-37.) MMS contends that it had no fiduciary relationship with Defendants in connection with their compliance and obligations

---

[4] Kavalec and Alferio are representing themselves pro se, while the other Defendants are represented by counsel. However, as noted previously, all Defendants' Third-Party Complaints contain the same allegations.

under either HIPAA or ACA, and, therefore, both counts fail as a matter of law. (Doc. No. 28-1 at 1-2, 6-12.) The Court agrees.

To determine if a defendant breached its fiduciary duties under ERISA, courts "must engage in two inquiries: first, whether Defendant was an ERISA fiduciary, and second, whether Defendant's action amounted to a breach." *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Michigan*, 722 F.3d 861, 865 (6th Cir. 2013). Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). In contrast, "'purely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits,' are not fiduciary functions." *Deschamps v. Bridgestone Americas, Inc. Salaried Employees Ret. Plan*, 840 F.3d 267, 278 (6th Cir. 2016) (quoting *Pipefitters Local 636 v. Blue Cross & Blue Shield of Mich.*, 213 F. App'x 473, 477 (6th Cir. 2007)).

"'[T]he definition of a fiduciary under ERISA is a functional one, [and] is intended to be broader than the common-law definition' such that the issue of whether one is considered a fiduciary does not turn upon formal designations." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) (quoting *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999)). Accordingly, an ERISA fiduciary "not only includes persons specifically named as fiduciaries by the benefit plan, but

7

also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets." *Id.*

In addition, "[u]nder ERISA a person is a fiduciary only with respect to those aspects of the plan over which he or she exercises authority or control." *Id.* For example, "an entity 'who does not control or influence the decision to deny benefits is not the fiduciary with respect to denial of benefit claims' and is, therefore, not a proper defendant to such a claim." *Corey v. Sedgwick Claims Mgmt. Services*, 165 F. Supp. 3d 672, 676 (N.D. Ohio 2016) (quoting *Moore*, 458 F.3d at 438). Thus, critically, "the proper inquiry in determining which party is a proper defendant to a particular ERISA claim is not whether the entity was acting as a fiduciary in general, but whether it was 'acting as a fiduciary *when taking the action subject to complaint*.'" *Id.* (quoting *Cultrona v. Nationwide Life Ins. Co.*, 936 F. Supp. 2d 832, 857 (N.D. Ohio 2013)).

Here, the action giving rise to Defendants' claims is MMS's alleged implementation of a plan that failed to comply with HIPAA and ACA. (Doc. No. 5 at ¶¶ 124-37.) Specifically, Defendants seek to hold MMS liable to the extent that the plan violated HIPAA and ACA, as alleged in the Secretary's Complaint, by failing to comply with HIPAA's preexisting condition requirement with respect to cosmetic surgery and certain ACA requirements related to preventive services. (*Id.*; Doc. No. 1 at ¶¶ 82, 90.) Thus, to survive MMS's Motions to Dismiss, Defendants must allege facts establishing that MMS had discretionary authority or control over the creation and adoption of plan benefits, such that MMS was a fiduciary with respect to the plan for purposes of compliance with HIPAA or ACA. However, Defendants do not ever allege that MMS had control over the plan benefit decision-making process. Nor do they allege that MMS ever exercised any decision-making authority with respect to the specific HIPAA and ACA violations at issue.

8

Instead, Defendants characterize MMS's role with respect to plan benefits as "reviewing, commenting on, and implementing the benefit books" of the Fund. (Doc. No. 5 at ¶ 119.) Defendants also allege that MMS reviewed plan revisions and "made comments and proposed changes" that Defendants relied upon in making changes to the plan. (*Id.* at ¶¶ 120-123.) Accepting these allegations as true as the Court must at this stage, not once do Defendants actually allege MMS had decision-making authority with respect to plan benefits. While Defendants allege MMS reviewed the benefit books and that they relied on MMS's comments, inherent in those allegations is the admission that it was Defendants—not MMS—who had the authority to create, adopt, or change plan benefits. In sum, there are simply no factual allegations in Defendants' Third-Party Complaints establishing fiduciary duties owed by MMS to Defendants in connection with the creation, adoption, and maintenance of plan benefits. Indeed, such fiduciary duties on the part of MMS are expressly disclaimed and reserved to the Fund by Sections 3.1 and 3.2 of the TPA Agreement referenced in the Third-Party Complaints. (*See* Doc. No. 5 at ¶ 139; Doc. No. 30-1 at 6.)

And while Defendants allege that MMS "was at all times relevant to this case a fiduciary of Third Party Plaintiffs the Fund and Board," Defendants must allege facts sufficient to show that MMS was not merely acting as a fiduciary in general, but that MMS was acting as a fiduciary when taking the action subject to complaint. (Doc. No. 5 at ¶ 116.) As described above, Defendants have not done so. Moreover, the Court need not accept this legal conclusion as true. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563-64 (6th Cir. 2011) ("We need not accept these legal conclusions as true, and we decline to do so."). As a result, Counts I and II of Defendants' Third-Party Complaints fail to state a claim for breach of fiduciary duty under ERISA.

9

### b. Count III

In Count III, Defendants set forth a claim for breach of contract. (Doc. No. 5 at ¶¶ 138-47.) MMS asserts that Defendants' breach of contract claim cannot be maintained under Federal Rule of Civil Procedure 14 because it is not derivative of the underlying Complaint. (Doc. No. 28-1 at 12-14.) Alternatively, MMS argues that Defendants have failed to allege facts sufficient to state a claim. (*Id.* at 14-15.) The Court concludes that Defendants' allegations are insufficient to state a claim for breach of contract.[5]

In Ohio, to prove a breach of contract claim, a plaintiff must demonstrate that: "(1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure." *Second Calvary Church of God in Christ v. Chomet*, No. 07CA009186, 2008 WL 834434, at *2 (Ohio Ct. App. 9th Dist. Mar. 31, 2008). "A complaint that fails to point to a specific contract provision that has been breached falls short of setting forth a breach of contract claim." *Wamen v. Goodyear Tire & Rubber Co.*, No. 5:13CV1084, 2014 WL 185901, at *3 (N.D. Ohio Jan. 15, 2014). Moreover, "it is insufficient for a claimant to allege generally that a contract was breached without identifying the factual basis for that allegation." *GE Elec. Co. v. S & S Sales Co.*, No. 1:11cv00837, 2011 WL 4369045, at *2 (N.D. Ohio Sept. 19, 2011).

---

[5] Pursuant to Rule 14, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). Under this rule, "[t]hird-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). While not entirely clear from Defendants' allegations, it is possible that Rule 14's requirements have been met, as Defendants appear to be attempting to shift their liability from the underlying Complaint for any violations of HIPAA and ACA to MMS based on MMS's breach of contract. Thus, out of an abundance of caution, the Court will assess the merits of Defendants' breach of contract claims.

Initially, Defendants fail to identify any terms of the TPA Agreement that have been breached. Instead, Defendants allege that MMS made several material representations to Defendants in connection with the TPA Agreement and that it failed to perform services under the TPA Agreement in accordance with those material representations. (Doc. No. 5 at ¶¶ 141-45.) However, Defendants do not allege that any of these material representations were incorporated into the contract, and, thus, have failed to identify a single term of the TPA Agreement that MMS has breached.

Moreover, even if the Court were to assume that MMS's alleged material representations constituted terms of performance under the TPA Agreement, Defendants have not alleged a single factual basis for the alleged breach. Defendants allege only that MMS "has failed to perform its services in accordance with its material representations" and that MMS "has breached its contract with the Third Party Plaintiffs." (*Id.* at ¶¶ 145-46.) Defendants have not alleged how MMS failed to appropriately perform its services and have not identified a single act that MMS took that breached either the TPA Agreement or any alleged material representation. Consequently, the Court finds Defendants' conclusory allegations with regard to MMS's breach of contract insufficient to state a claim.

## IV. Conclusion

For the reasons set forth above, MMS's Motions to Dismiss (Doc. Nos. 28, 33) are GRANTED. The dismissal is without prejudice in light of the "well-established preference for allowing claims to be decided on their merits when possible." *See Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412, 416 (6th Cir. 2018).

**IT IS SO ORDERED.**

Date: May 4, 2020

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE