# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **SECRETARY OF U.S. DEPARTMENT OF LABOR,** | **CASE NO. 1:19-CV-00968** |
| **Plaintiff,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| **ROBERT KAVALEC, et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants.** | |

This matter comes before the Court upon several motions of the parties.  First, on March 23, 2020, Defendant Victor Collova ("Collova") filed an Emergency Motion for Order Regarding Payment of Attorneys' Fees ("Motion for Attorneys' Fees").  (Doc. No. 67.)  Defendant Fleet Owners Insurance Fund (the "Fund") filed a response in partial support of Collova's Motion for Attorneys' Fees on April 1, 2020.  (Doc. No. 68.)  Plaintiff Eugene Scalia, Secretary of Labor (the "Secretary"), United States Department of Labor, filed a brief in opposition to Collova's Motion for Attorneys' Fees on April 6, 2020, as well as a Notice of Supplemental Authority on April 7, 2020, to which Collova replied on April 13, 2020.  (Doc. Nos. 70, 72, 73.)

Second, on April 16, 2020, the Secretary filed a Motion for Preliminary Injunction Enjoining the Plan From Paying or Advancing Legal Fees to Any of the Fiduciary Defendants ("Motion for Preliminary Injunction").  (Doc. No. 74.)  The Fund and Collova filed briefs in opposition to the Secretary's Motion for Preliminary Injunction on April 27, 2020 and April 30, 2020, respectively, to which the Secretary replied on May 7, 2020.  (Doc. Nos. 75, 76, 81.)

Finally, on May 13, 2020, the Secretary filed a Motion to Strike Defendant Fund's Memorandum in Opposition to DOL Motion for Preliminary Injunction ("Motion to Strike").  (Doc. No. 82.)  The Fund filed a brief in opposition to the Secretary's Motion to Strike on June 3, 2020, to which the Secretary replied on June 9, 2020.  (Doc. Nos. 88, 89.)

For the following reasons, Collova's Motion for Attorneys' Fees (Doc. No. 67) is DENIED, the Secretary's Motion for Preliminary Injunction (Doc. No. 74) is GRANTED, and the Secretary's Motion to Strike (Doc. No. 82) is GRANTED.

## I.    Background

On April 30, 2019, the Secretary filed a Complaint against Defendants Robert Kavalec ("Kavalec"), Charles Alferio ("Alferio"), Collova, the Board of Trustees of the Fleet Owners Insurance Fund (the "Board"), and the Fund (collectively, "Defendants") in this Court, setting forth claims for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  (Doc. No. 1.)  The Secretary alleges that Kavalec, Alferio, Collova, and the Board (collectively, the "Fiduciary Defendants"), as fiduciaries of the Fund,[1] violated several provisions of ERISA by, among other things, authorizing the payment of their own compensation and personal expenses by the Fund, allowing an ineligible person to participate in the Fund, and administering the Fund in violation of the Health Insurance Portability and Accountability Act ("HIPAA") and the Patient Protection and Affordable Care Act ("ACA").  (*Id.* at ¶¶ 22-96.)  The Secretary seeks a variety of remedies pursuant to ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), such as an

---

[1] The Secretary does not allege any violations by the Fund or seek any relief from the Fund.  Rather, the Secretary named the Fund as a defendant pursuant to Fed. R. Civ. P. 19(a) to assure complete relief can be granted.  (Doc. No. 17 at 2 n.2.)

order permanently enjoining Defendants from serving as fiduciaries to ERISA-covered plans and the restoration to the Fund of all losses caused by Defendants' breaches of duty.  (*Id.* at Pgs. 22-23.)

With respect to the Secretary's allegations of self-dealing in Counts 1 through 3 of the Complaint, the Secretary has submitted evidence that Kavalec, Alferio, and Collova each determined and/or approved their own compensation while serving as trustees of the Fund.  Specifically, from January 1, 2012 to December 31, 2018, the Fund paid Kavalec more than $1.2 million in the form of wages, Fund health benefits, cashed-out vacation, and SEP IRA contributions.  (Doc. No. 40-1 at ¶ 6.)  These payments were made by checks drawn on the Fund's account, and over 90 percent of these checks were signed by Kavalec himself.  (*Id.* at ¶ 7.)  Kavalec has also admitted that trustees of the Fund determined their own salaries, and that he awarded himself a raise in October 2013.  (Doc. No. 40-2 at 26-27.)  From November 1, 2014 to October 31, 2018, the Fund also paid Alferio more than $270,000 in the form of wages, Fund health benefits, bonuses, and SEP IRA contributions.  (Doc. No. 40-1 at ¶ 9.)  These payments were again made by checks drawn on the Fund's account, and over 45 percent of these checks were signed by Alferio himself.  (*Id.* at ¶ 10.)  Further, from January 1, 2012 to October 31, 2014, the Fund paid Collova approximately $48,000 in the form of wages, bonuses, and SEP IRA contributions.  (*Id.* at ¶ 12.)  These payments were similarly made by checks drawn on the Fund's account, and over 97 percent of these checks were signed by Collova himself. (*Id.* at ¶ 13.)

On November 1, 2019, the Court stayed this action until March 1, 2020.  (Doc. No. 50.)  One purpose of the stay was to give Defendants time to resolve issues related to insurance coverage of their litigation expenses.  (*Id.* at 7.)  No resolution was reached, however, and, on February 19, 2020, the Fiduciary Defendants filed a Motion for Leave to File a Third-Party Complaint against Hudson

Insurance Company ("Hudson").  (Doc. No. 61.)  On May 4, 2020, the Court granted the Fiduciary

Defendants' Motion, and they filed their Third-Party Complaint against Hudson the next day.  (Doc.

Nos. 79, 80.)

About a month after the filing of the Fiduciary Defendants' Motion for Leave to File a Third-

Party Complaint, Collova individually also filed a Motion for Attorneys' Fees.  (Doc. No. 67.)

Therein, Collova seeks an order directing the Fund to pay for the costs of Collova's defense in this,

and another related, matter.  (*Id.* at 1.)  In support of his request, Collova relies on certain provisions

of the Trust Agreement that governs the Fund.  (Doc. No. 40-5.)  In particular, Article VIII, Section

5 of the Trust Agreement provides:

> The reasonable costs and reasonable expenses of any action, suit or proceeding
> brought by or against the Trustees or any of them, including reasonable attorneys fees,
> shall be paid from the Fund to the extent permitted by applicable law, except in relation
> to matters as to which it shall be adjudged in such action, suit or proceeding that such
> Trustee or Trustees were guilty of willful misconduct or were grossly negligent in the
> performance of his or their duties hereunder.

(*Id.* at 18.)  Article VI, Section 5 also provides:

> Any or all Trustees shall be reimbursed for all reasonable and necessary expenses
> incurred in the performance of their duties, including among other things, expenses
> that they may incur in defending or prosecuting any action or actions brought by, or
> against them as Trustees or by virtue of their serving as Trustees, subject, however, to
> the limitations hereinafter expressed.  As used in the preceding sentence, the term
> "expenses" includes, but is not limited to, reasonable attorneys fees.

(*Id.* at 15.)  The Fund has filed a brief in partial support of Collova's request for the Fund's payment

of his attorneys' fees, and the Secretary has filed a brief opposing Collova's request for a variety of

reasons.  (Doc. Nos. 68, 70.)

In addition to opposing Collova's request for the Fund's payment of his attorneys' fees, on

April 16, 2020, the Secretary filed his own Motion for Preliminary Injunction to enjoin the Fund from

4

paying for the defense of any of the Fiduciary Defendants.  (Doc. No. 74.)  On May 13, 2020, the

Secretary also filed a Motion to Strike, seeking to strike the Fund's opposition to his Motion for

Preliminary Injunction because it contains irrelevant personal attacks on the Secretary's investigator.

(Doc. No. 82.)  Collova's Motion for Attorneys' Fees and the Secretary's Motions for Preliminary

Injunction and to Strike have all been fully briefed and are ripe for consideration.

## II.      Collova's Motion for Attorneys' Fees

In his Motion for Attorneys' Fees, Collova asserts that the Trust Agreement requires the Fund

to pay for his defense costs and that this payment is permissible under ERISA, but that the Fund has

thus far refused to make any payments because of the Secretary's threats of additional litigation were

the Fund to do so.  (Doc. No. 67.)  As a result, Collova requests that the Court issue an order

permitting the Fund to advance the costs of Collova's attorneys' fees.  (*Id.* at 14.)[2]  In opposition, the

Secretary asserts that Collova has provided no basis for the relief requested in his Motion for

Attorneys' Fees, and that the only possible procedural basis for the requested relief, a preliminary

injunction, is inappropriate because there is no relationship between the relief sought and any claims

Collova has plead.  (Doc. No. 70 at 1-3.)  In response, Collova admits that he is not seeking a

preliminary injunction.  (Doc. No. 73 at 2.)  Instead, Collova asserts the Court may grant the requested

relief under its inherent authority.  (*Id.* at 2-8.)  The Court will deny Collova's Motion for Attorneys'

Fees, as the Court concludes that it has no authority to grant the requested relief in these

circumstances.

---

[2] The Fund has indicated that it generally supports Collova's theory as to its obligation to pay for his reasonable attorneys' fees, but has requested that the Court hold off on any ruling regarding such attorneys' fees until the litigation against Hudson is resolved and all provider claims have been adjusted.  (Doc. No. 68 at 2-3.)

The Supreme Court has recognized that "[f]ederal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962)).  For example, district courts have the inherent power to sanction parties for misconduct and to rule on motions in limine.  *See id.*; *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Although the Supreme Court has never precisely delineated the outer boundaries of these powers, it has recognized certain limits.  *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016).  Specifically, (1) "the exercise of an inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice," and (2) "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute."  *Id.* at 1892 (citations omitted).

Applying these principles, Collova argues that in this situation, it is appropriate for the Court to exercise its inherent power to rule on Collova's Motion for Attorneys' Fees, whether that be by issuing an order requiring the Fund to pay Collova's attorneys' fees, declaring the state of the law as applied to the issue of the Fund's payment of his attorneys' fees, ordering the Secretary to cease threatening further litigation, or providing some other type of relief to permit the Fund's payment of his attorneys' fees.  (Doc. No. 73 at 4-8.)  However, Collova does not cite a single case in which a court exercised its inherent authority to intervene in a dispute over a party's right to the payment of its attorneys' fees, and the Court is unpersuaded that it is appropriate for it to do so here.  Critically, Collova recognizes that he had the option to file a separate suit or a crossclaim directly against the Fund for the payment of the attorneys' fees to which he claims he is entitled.  (*Id.* at 5.)  The Court sees no reason to exercise its inherent powers when there is an appropriate procedural avenue that

6

was not followed that would have directly presented the issue.  Accordingly, Collova's Motion for Attorneys' Fees is denied.

## III.    The Secretary's Motion for Preliminary Injunction

In the Secretary's Motion for Preliminary Injunction, he seeks an order enjoining the Fund from paying for or advancing the defense costs of any of the Fiduciary Defendants.  (Doc. No. 74.) The Secretary asserts that while the Fund has refused to pay for the Fiduciary Defendants' defense costs to date, the Fund has indicated that it believes it is obligated to do so and may change course at any time, which would cause irreparable harm to the Fund's participants through further depletion of the Fund's assets.  (*Id.* at 1.)  In response, Collova asserts that a preliminary injunction is not warranted because (1) there is not a sufficient connection between the preliminary injunction and the claims in the Secretary's Complaint, and (2) the Secretary cannot establish any of the factors necessary to support the issuance of a preliminary injunction.  (Doc. No. 76.)  The Fund has also opposed the Secretary's request and appears to argue that the Secretary cannot demonstrate it has a sufficient likelihood of success on the merits of its claims.  (Doc. No. 75.)  Upon review, the Court finds that a preliminary injunction is appropriate and will grant the Secretary's Motion for Preliminary Injunction.

### a.  Standard of Review

"In general, courts must examine four factors in deciding whether to grant a preliminary injunction: (1) whether the movant has demonstrated a substantial likelihood of success on the merits, (2) whether the movant will suffer irreparable injury absent injunction, (3) whether a preliminary injunction would cause substantial harm to others, and (4) whether the public interest will be served by an injunction."  *Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529, 539-40

(6th Cir. 2017).  "These factors are not prerequisites, but are factors that are to be balanced against each other."  *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  However, "a finding that there is simply no likelihood of success on the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).  In addition, "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."  *Overstreet*, 305 F.3d at 573.  "The party seeking the injunction must establish its case by clear and convincing evidence."  *Draudt v. Wooster City Sch. Dist. Bd. of Educ.*, 246 F. Supp. 2d 820, 825 (N.D. Ohio 2003).

### b.  Analysis

#### i.  Relationship to Complaint

Before reaching an assessment of the four factors identified above, Collova first argues that the Secretary's request is improper because the relief requested as part of the preliminary injunction is not sufficiently related to the claims in the Secretary's Complaint, none of which are based on the Fund's unlawful payment of attorneys' fees.  (Doc. No. 76 at 3-4.)  In response, the Secretary asserts that the requisite relationship exists because a prohibition on the Fund's payment of attorneys' fees could be ordered as part of a final order providing equitable relief, and the preliminary injunction would preserve the Court's ability to order a meaningful, enforceable remedy for the Fiduciary Defendants' ERISA violations by preventing the further depletion of the Fund's assets.  (Doc. No. 81 at 2-4.)  The Court agrees with the Secretary that a sufficient relationship exists to support the issuance of a preliminary injunction.

Generally, the Supreme Court has indicated that "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."

*De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945).  In other words, "[a] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).  "This is because '[t]he purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was or will be harmed through the illegality alleged in the complaint.'" *Id.* (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

In *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009), the Ninth Circuit addressed this issue in the context of a case involving very similar circumstances to those present here.  In *Johnson*, participants in an employee stock ownership plan ("ESOP")—which is a type of ERISA plan designed to invest primarily in the stock of the employer who created it—brought suit against several defendants for the alleged breach of their fiduciary duties under ERISA.  572 F.3d at 1072, 1076. The defendants then sought to enforce indemnification agreements they had entered into with TEOHC, which was owned by the ESOP, that required TEOHC to advance the defendants' defense costs.  *Id.* at 1075.  The district court entered a preliminary injunction prohibiting TEOHC from advancing those defense costs, which the Ninth Circuit upheld.  *Id.* at 1075, 1086.  In doing so, the Ninth Circuit rejected the defendants' argument that the preliminary injunction was improper because it was not of the same character as the judgment that may finally issue, reasoning:

> [T]he district court has jurisdiction under ERISA to impose a constructive trust over any assets in Defendants' possession it concludes rightfully belong to the ESOP.  29 U.S.C. § 1109(a); *see also Amalgamated Clothing & Textile Workers Union, AFL–CIO v. Murdock*, 861 F.2d 1406, 1412 & n. 10 (9th Cir.1988).  Furthermore, if TEOHC is allowed to advance funds to Couturier, Plaintiffs will undoubtedly seek their recovery also as part of the final judgment.  As this is not a case where the preliminary

injunction "deals with a matter lying wholly outside the issues in the suit," *De Beers*, 325 U.S. at 220, 65 S.Ct. 1130, Defendants' argument fails.

*Id.* at 1084.

Similarly, in this case, the Secretary seeks the restitution of all of the Fund's losses resulting from the Fiduciary Defendants' fiduciary breaches under ERISA and other appropriate equitable relief pursuant to ERISA § 409, 29 U.S.C. § 1109.  *See* 29 U.S.C. § 1109 (providing that fiduciaries "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate").  As a result, the Court may prohibit the Fund from paying for the Fiduciary Defendants' attorneys' fees in connection with violations of their fiduciary duties as part of a final order granting equitable relief.  Because this relief could be awarded as a final remedy pursuant to the Court's equitable power, it can likewise be ordered through a preliminary injunction.  Moreover, as in *Johnson*, the Secretary has made clear that if the Fund is allowed to advance defense costs, the Secretary will seek their recovery as part of the final judgment as well.  Therefore, the requisite relationship exists between the Secretary's Motion for Preliminary Injunction and his underlying claims.  As a result, the Court will move on to an assessment of the factors courts generally consider in deciding whether to issue a preliminary injunction.

### ii.  Likelihood of Success on the Merits

First, the Court considers whether the Secretary "has demonstrated 'a strong likelihood of success on the merits.'"  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)).  "In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success."  *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119

F.3d 393, 402 (6th Cir. 1997).  Nonetheless, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation."  *Id.*

The Secretary asserts that he has a strong likelihood of success of proving that the Fiduciary Defendants violated ERISA's self-dealing prohibitions by determining and/or approving their own compensation as alleged in Counts 1 through 3 of the Complaint.  (Doc. No. 74 at 3-9.)  As a result, the Secretary argues he also has a strong likelihood of success on his claim for appropriate equitable relief barring the Fund from paying the Fiduciary Defendants' defense costs because a finding of ERISA violations would result in a prohibition on utilizing Fund assets to defend the Fiduciary Defendants in this litigation.  (*Id.* at 3, 9-12.)  In contrast, both the Fund and Collova assert that the Secretary has not shown that he will prevail on his self-dealing claims.  (Doc. No. 75 at 4-5; Doc. No. 76 at 5-6.)  Collova also contends that ERISA does not prohibit the Fund from paying for the Fiduciary Defendants' legal expenses, regardless of whether the Secretary has shown a likelihood of succeeding on the merits of his self-dealing claims.  (*Id.* at 6-8.)  The Court concludes that the Secretary has a strong likelihood of success on both his underlying self-dealing claims and his claim for appropriate equitable relief, including an injunction against the Fund paying the Fiduciary Defendants' defense costs.

With respect to the Secretary's self-dealing claims, ERISA § 406(b), 29 U.S.C. § 1106(b), provides that a plan fiduciary shall not "(1) deal with the assets of the plan in his own interest or for his own account," or "(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries."  29 U.S.C. §§ 1106(b)(1)-(2).  According to

11

the Sixth Circuit, this provision "contains an 'absolute bar against self dealing.'" *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 750 (6th Cir. 2014) (quoting *Brock v. Hendershott*, 840 F.2d 339, 341 (6th Cir. 1988)).  Fiduciaries "must either avoid the transactions described in Section 406(b) or cease serving in their capacity as fiduciaries, no matter how sincerely they may believe that such transactions will benefit the plan."  *Sec'y of Dep't of Labor v. United Transp. Union ("UTU")*, No. 1:17 CV 923, 2020 WL 1611789, at *8 (N.D. Ohio Mar. 30, 2020) (quoting *Lowen v. Tower Asset Mgmt.*, 829 F.2d 1209, 1213 (2d Cir. 1987)).

To illustrate, in a recent case from this District, ERISA plan trustees authorized a plan to pay administrative service fees to a union of which the trustees were also officers.  *Id.* at *1-2.  The court found that the trustees' actions were a "classic example of self-dealing" and violated ERISA § 406(b)(1) because, "as officers of the Union, Defendants had an interest in receiving payments from the Plan."  *Id.* at *8; *see also Barboza v. California Ass'n of Prof'l Firefighters*, 799 F.3d 1257, 1270 (9th Cir. 2015) ("CAISI is a fiduciary that paid its own fees from Plan assets, and thus engaged in a prohibited transaction under 29 U.S.C. § 1106(b)(1).").

In this case, the Secretary has submitted evidence that Kavalec, Alferio, and Collova determined and/or approved their own compensation from the Fund while they served as trustees for the Fund, including signing their own checks drawn on the Fund's account.  (Doc. No. 40-1 at ¶¶ 6-13; Doc. No. 40-2 at 26-27.)  Defendants do not dispute this evidence.  Thus, the Secretary has established a strong likelihood of success of proving that the Fiduciary Defendants engaged in self-dealing by transferring plan assets directly to themselves, and, therefore, that the Fiduciary Defendants engaged in prohibited transactions under ERISA § 406(b).

The Fund and Collova offer several arguments as to why the Fiduciary Defendants' actions did not, in fact, amount to a breach of their fiduciary duties, but none are persuasive.  First, Collova argues that he only accepted the compensation that was already in place when he assumed his role, and the Secretary has failed to cite any cases that support the proposition that a trustee breaches his or her fiduciary duties by merely acquiescing to a salary at a rate already established before he took office.  (Doc. No. 76 at 5-6.)  However, the Fiduciary Defendants, including Collova, did more than just passively accept their compensation.  Rather, they actively authorized such compensation by signing, on behalf of the Fund, checks payable to themselves.  (*See* Doc. No. 40-1 at ¶¶ 7, 10, 13.)  Nor is signing a check drawn on the Fund's account to direct funds a purely ministerial act as Collova claims.  (Doc. No. 73 at 11.)  To the contrary, it is a typical fiduciary function.  *See Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006) (holding that a party that "had the power to write checks on the plan account . . . and exercised that power" was a fiduciary because it exercised control over plan assets).  Moreover, even if Collova's violation resulted solely from his inaction or passive acquiescence, fiduciaries under EIRSA are generally "not at liberty to do nothing," and a fiduciary's "actions and inactions could expose him to liability if they resulted in an ERISA violation."  *UTU*, 2020 WL 1611789, at *16.

Second, both Collova and the Fund appear to assert that no violation occurred because the compensation provided to the Fiduciary Defendants was reasonable.  (Doc. No. 73 at 11; Doc. No. 75 at 4-5.)  ERISA § 408, 29 U.S.C. § 1108, does provide an exemption from the prohibitions contained in ERISA § 406 for "contracting or making reasonable arrangements with a party in interest for . . . services necessary for the . . . operation of the plan, if no more than reasonable compensation is paid therefor" and for a fiduciary "receiving any reasonable compensation for services rendered . .

13

. in the performance of his duties with the plan."  29 U.S.C. §§ 1108(b)(2), (c)(2).  But "the Sixth Circuit has held that the 'reasonable compensation' provisions in ERISA §§ 408(b)(2) and (c)(2) do not apply to the prohibitions described in § 406(b)."  *UTU*, 2020 WL 1611789, at *9 (citing *Hi-Lex Controls*, 751 F.3d at 750).  As such, Collova's and the Fund's arguments in this regard lack merit.

Finally, the Fund alleges that various departments of the federal government approved the structure of the Fund, which it contends should be an absolute defense to liability, although the Fund cites no legal support for this proposition.  (Doc. No. 75 at 4.)  The Secretary points out that there is a mechanism by which the Secretary can authorize fiduciary conduct that would otherwise violate ERISA § 406(b) through the grant of an exemption pursuant to ERISA § 408.  (Doc. No. 81 at 5.) However, there is no evidence that the Fiduciary Defendants either sought or received an exemption, and, therefore, they have not provided any support for a defense based on the government's consent to their actions.

Accordingly, the Secretary has established a strong likelihood of success on its claims that the Fiduciary Defendants violated ERISA by engaging in prohibited self-dealing transactions.  The next issue the Court must decide is whether this showing should preclude the Fiduciary Defendants from receiving funds from the Fund to pay for their defense costs.

Under ERISA § 410(a), 29 U.S.C. § 1110(a), "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."  29 U.S.C. § 1110(a).  However, ERISA § 410(b), 29 U.S.C. § 1110(b), permits a plan, fiduciary, or employer to purchase insurance to cover liability resulting from the acts of a fiduciary.  29 U.S.C. § 1110(b).

The Department of Labor has interpreted ERISA § 410(a) "to permit indemnification agreements which do not relieve a fiduciary of responsibility or liability." 29 C.F.R. § 2509.75–4. In other words, an indemnification provision is valid if it "leave[s] the fiduciary fully responsible and liable, but merely permit[s] another party to satisfy any liability incurred by the fiduciary in the same manner as insurance." *Id.* Importantly, however, "[t]his DOL exemption does not . . . extend to indemnification of a fiduciary by the ERISA plan itself." *Johnson*, 572 F.3d at 1080; 29 C.F.R. § 2509.75–4 ("The Department of Labor interprets section 410(a) as rendering void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan."). This is because "[s]uch an arrangement would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations." 29 C.F.R. § 2509.75–4.

Based on this reasoning, courts have held that ERISA § 410(a) prohibits a plan's advancement or payment of a fiduciary's defense costs, particularly when a breach of fiduciary duties has been established or proven likely. For example, in *Sec'y U.S. Dep't of Labor v. Koresko*, the Third Circuit stated:

> [I]n this case, Koresko was seeking advancement costs from the plans themselves, not another party. This would effectively "abrogate[e] the plan's right to recovery from the fiduciary for breaches of fiduciary obligations." *Id.* Although Koresko could have relied on liability insurance or indemnification through another party, he could not rely on plan assets to front his legal costs. We agree with the District Court order denying Koresko from relying on plan assets to cover his litigation costs as a proper interpretation of 29 U.S.C. § 1110 and 29 C.F.R. § 2509.75–4.

646 F. App'x 230, 244-45 (3d Cir. 2016); *see also Ramsey v. Se. Emp. Benefit Services, Inc.*, No. 4:07–CV–00790 JMM, 2010 WL 79835, at *5 (E.D. Ark. Jan. 7, 2010) ("Further, the Agreements provide for the recovery of attorney[']s fees and costs from the Plan, an arrangement considered void

15

by the Department of Labor and invalid under Section 410."); *Leigh v. Engle*, 619 F. Supp. 154, 159 (N.D. Ill. 1985) ("[I]ndemnification for legal fees when a breach of trust has been established, though perhaps provided for by the trust agreement, is not allowed under ERISA.").

Similarly, in *Johnson*, participants in an ESOP brought suit against several defendants for the alleged breach of their fiduciary duties under ERISA. 572 F.3d at 1072, 1076. The defendants then sought to enforce indemnification agreements they had entered into with TEOHC, which was owned by the ESOP, that required TEOHC to advance the defendants' defense costs. *Id.* at 1075. While not technically seeking indemnification by an ERISA plan, the Ninth Circuit found that, similar to direct indemnification by a plan, "any proceeds taken from TEOHC's remaining funds to pay Defendants' defense costs will, dollar for dollar, reduce the funds available for distribution to ESOP participants." *Id.* at 1080. As a result, the Ninth Circuit affirmed the district court's order enjoining TEOHC from advancing the defendants' defense costs, stating that "[b]ecause Plaintiffs are likely to succeed in proving that Defendants breached their ERISA duties, they are also likely to succeed in proving that Defendants are not entitled to indemnification, nor to advancement of defense costs, because section 410(a) of ERISA renders the governing agreements void." *Id.* at 1079.

Likewise, here, the Fiduciary Defendants assert that the Fund itself is required to advance their defense costs pursuant to the relevant Trust Agreement, which would directly reduce the amount of funds available to the Fund's participants. While the Secretary's position, and the case law, is somewhat unclear as to whether a plan's advancement or payment of a fiduciary's defense costs is barred in all circumstances or only those where the fiduciary's breach is proven or shown to be likely, the Court need not decide that issue here. That is because, as described above, the Secretary has shown that he is likely to succeed on his self-dealing claims against the Fiduciary Defendants. As a

16

result, he is also likely to succeed in proving that the Fiduciary Defendants are not entitled to the payment of their defense costs pursuant to ERISA § 410(a).  *See id.*  Therefore, the Secretary's likelihood of success on the merits of his claims favors the issuance of a preliminary injunction enjoining the Fund from advancing the Fiduciary Defendants' defense costs.

The Court also finds Collova's arguments to the contrary unavailing.  First, Collova points out that ERISA § 410(a) only prohibits agreements that "purport[] to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under" ERISA.  29 U.S.C. § 1110(a)*; see also Pfahler v. Nat'l Latex Products Co.*, 517 F.3d 816, 836-37 (6th Cir. 2007) ("This provision, however, merely 'prohibits agreements that diminish the statutory obligations of a fiduciary.'") (citation omitted).  Collova argues that the payment of the Fiduciary Defendants' attorneys' fees is not prohibited by the plain language of the statute because it does not relieve them of any responsibilities or liability under ERISA since they would still be liable for any damages caused by any breach of fiduciary duty.  (Doc. No. 67 at 9-10.)  In support of this argument, Collova relies on a single district court case that adopted this reasoning.  *See Cent. States, Se. & Sw. Areas Pension Fund v. Am. Nat'l Bank & Tr. Co.*, No. 77-CV-4335, 1979 U.S. Dist. LEXIS 8931, at *11 (N.D. Ill. Oct. 26, 1979) ("The reimbursement of litigation costs does not shield a fiduciary from any liability or responsibility whatsoever; it merely covers legal fees and litigation costs.").  However, this interpretation of ERISA § 410(a) goes against the weight of authority discussed above, which has found that a plan's advancement of attorneys' fees has the same result as an exculpatory clause because it "would effectively 'abrogate[e] the plan's right to recovery from the fiduciary for breaches of fiduciary obligations.'"  *Koresko*, 646 F. App'x at 245 (quoting 29 C.F.R. § 2509.75–4).

17

Collova also asserts that *Schafer v. Multiband Corp.*, 551 F. App'x 814 (6th Cir. 2014) supports his argument that the Fund may advance, and reimburse, all costs related to Collova's defense of this matter. (Doc. No. 67 at 10-12.) If anything, however, *Schafer* supports the Secretary's position. In *Schafer*, the Sixth Circuit considered an arbitrator's decision invalidating an indemnification agreement under ERISA. 551 F. App'x at 815. The arbitrator held the indemnification agreements were invalid because ERISA § 410 only permits *insurance* to cover fiduciaries' potential liability, and, therefore, all *indemnification* agreements are invalid. *Id.* at 817. The Sixth Circuit noted that the arbitrator's decision was not supported by legal precedent because the Sixth Circuit had previously held that indemnification agreements are not categorically prohibited by ERISA. *Id.* at 819.

The Sixth Circuit also observed that "in some cases . . . an indemnity agreement has been treated as in effect an exculpatory agreement where the payment of the indemnity would, or could, adversely affect the resources of the victim of the fiduciary violation," and that "[a] number of courts have invalidated indemnity agreements because they would have some sort of financial impact on the plan itself." *Id.* at 820 (citing *Johnson*, 572 F.3d at 1080; *Donovan v. Cunningham*, 541 F. Supp. 276, 289 (S.D. Tex. 1982), *rev'd in part on other grounds*, 716 F.2d 1455 (5th Cir. 1983); *Fernandez v. K–M Indus. Holding Co.*, 646 F. Supp. 2d 1150 (N.D. Cal. 2009)). The court then indicated that this principle did not apply to the indemnification agreement at issue because the arbitrator "made no finding that the indemnity in this case could adversely affect the interests of the victims of the trust violation." *Id.* Thus, the Sixth Circuit signaled that if the arbitrator had found that the indemnification agreement at issue could have adversely affected the interests of the victims of the trust violation, as is the case here where advancement of the Fiduciary Defendants' defense costs would reduce the

18

Fund's remaining assets, then the arbitrator's ruling voiding the indemnification agreement would have been correct. As a result, the Court finds Collova's reliance on *Schafer* misplaced.

Finally, Collova argues that even under the Secretary's theory, § 410(a) only bars the Fund's payment of Collova's attorneys' fees with respect to claims for breach of fiduciary duty. (Doc. No. 76 at 7.) Therefore, Collova asserts that payment of his fees is not barred with respect to Counts 7 and 8 that relate to violations of HIPAA and ACA because those counts do not relate to breaches of fiduciary duty. (*Id.* at 7-8.)[3] However, contrary to Collova's assertions, the Secretary does properly allege in these counts that the Fiduciary Defendants breached their fiduciary duties under ERISA § 404(a)(1)(A), (B), and (D), 29 U.S.C. § 1104(a)(1)(A), (B), and (D), by administering the Fund in violation of ERISA § 701, 29 U.S.C. § 1181, and ERISA § 715, 29 U.S.C. § 1185d. (Doc. No. 1 at ¶¶ 81-93.) Accordingly, the Fund's advancement of defense costs may be enjoined with respect to these counts as well.

### iii. Irreparable Injury

"[T]he second factor that a court must consider when deciding whether to issue a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction." *Certified Restoration*, 511 F.3d at 550. The Secretary argues that a preliminary injunction is necessary to prevent irreparable harm to the Fund and its participants because the Fund already lacks sufficient funds to pay all of the Fund's outstanding claims, and were the Fund to pay or advance fees to the Fiduciary Defendants, such fees would likely not be recoverable and the Fund's assets would be

---

[3] Collova also includes Count 9 within this discussion. (Doc. No. 76 at 7-8.) However, Count 9 is directed solely against the Board as an entity, not any of the individual Defendants, and, therefore, is not relevant to Collova. (*See* Doc. No. 1 at ¶¶ 94-96.) Moreover, to the extent Count 9 seeks only a correction to the Fund's Summary Plan Description and the Fund is no longer operating, the count is effectively moot.

further depleted.  (Doc. No. 74 at 13-14.)  In response, Collova asserts that the Secretary has only alleged monetary damages from the lack of a preliminary injunction, which is not considered irreparable harm.  (Doc. No. 76 at 8.)  The Court concludes the Secretary has established that a preliminary injunction is necessary to prevent irreparable harm.

A plaintiff's injury is considered "irreparable if it is not fully compensable by monetary damages."  *Overstreet*, 305 F.3d at 578.  However, courts have also found irreparable harm "where the facts show that the final equitable relief may be uncollectible."  *Transamerica Ins. Fin. Corp. v. N. Am. Trucking Ass'n, Inc.*, 937 F. Supp. 630, 634 (W.D. Ky. 1996) (citing *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 97 (6th Cir. 1982)).

In the instant matter, evidence indicates that the Fund's estimated unpaid claims exceed its current assets.  (*See* Doc. No. 68 at 2; Doc. No. 70-3.)  Moreover, it appears unlikely that Collova or any of the other Fiduciary Defendants would be able to reimburse the Fund were it to advance defense costs to them.  Indeed, without payment by the Fund, Kavalec and Alferio have been representing themselves *pro se*.  Collova has also indicated his inability to pay his attorneys' fees without advancement by the Fund.  (*See* Doc. No. 67.)  This demonstrates it is likely they also will be unable to repay any advanced fees, especially if they are also found liable for additional losses to the Fund due to their breaches of fiduciary duty.  *See Johnson*, 572 F.3d at 1081.  Consequently, if the Fund were to advance defense costs to the Fiduciary Defendants, there is little chance the Secretary would be able to recover those costs and the Fund's already limited assets would be further permanently depleted.  This would irreparably harm Fund participants who would not receive full payment on their claims and would render uncollectible the final equitable relief sought by the Secretary—i.e.,

20

full restitution of the Fund's losses. As such, this factor favors the issuance of a preliminary injunction.

### iv. Harm to Others

Next, the Court must consider "whether a preliminary injunction would cause substantial harm to others." *Flight Options*, 863 F.3d at 540. Collova does not contend that a preliminary injunction would harm any third parties, but asserts that he would be irreparably harmed by an injunction because he will be unable to continue to afford counsel in this matter and will be deprived of representation. (Doc. No. 76 at 8-9.) However, the advancement of attorneys' fees is likely barred, as shown above, and any harm Collova or the other Fiduciary Defendants may suffer is outweighed by the harm to the Fund's participants. Thus, this factor provides additional support for the grant of a preliminary injunction.

### v. Public Interest

The fourth and final factor courts must consider when granting a preliminary injunction is "whether the public interest will be served by an injunction." *Flight Options*, 863 F.3d at 540. The Secretary argues an injunction would serve the public interest by advancing the goals of ERISA, while Collova asserts an injunction would not serve the public interest because it would interfere with the fairness of judicial proceedings and a legitimate agreement to pay attorneys' fees. (Doc. No. 74 at 14-15; Doc. No. 76 at 9.) The Court agrees with the Secretary, and finds that a preliminary injunction will advance several important policy objectives of ERISA by protecting plan participants' benefits and preventing the misuse of plan funds, and will thus benefit the public interest. *See* 29 U.S.C. § 1001(a) (describing the "national public interest" underlying ERISA, including protecting the "promised benefits" of employees and their beneficiaries); *Johnson*, 572 F.3d at 1082.

21

Accordingly, the public interest also weighs in favor of granting the Secretary's Motion for Preliminary Injunction.

Because all of the factors favor the issuance of a preliminary injunction, the Court will grant the Secretary's Motion for Preliminary Injunction enjoining the Fund from paying for or advancing the defense costs of any of the Fiduciary Defendants.[4]

**IV.    The Secretary's Motion to Strike**

In the Secretary's Motion to Strike, the Secretary seeks to strike the Fund's opposition to the Secretary's Motion for Preliminary Injunction, which the Secretary asserts contains baseless and irrelevant personal attacks on the Secretary's investigator.  (Doc. No. 82.)  The Fund opposes the Secretary's request, arguing that its allegations are relevant to the investigator's bias and that the Secretary has not shown that it will suffer any prejudice from the allegations.  (Doc. No. 88.)  The Court will grant the Secretary's Motion to Strike.

On its own or upon a motion, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "A court has broad discretion in determining whether to grant a motion to strike."  *McKinney v. Bayer Corp.*, No. 10–CV–224, 2010 WL 2756915, at *2 (N.D. Ohio July 12, 2010).  However, "motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant."  *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio 2009).  Although Rule 12(f) only applies to pleadings, a court has "the inherent authority

---

[4] The Court notes that neither party requested an evidentiary hearing on the Secretary's Motion for Preliminary Injunction. In addition, no hearing was necessary because no facts material to the preliminary injunction are in dispute.  *See Certified Restoration*, 511 F.3d at 552 ("[A] hearing is only required when there are disputed factual issues, and not when the issues are primarily questions of law.").

to strike non-pleadings in order to manage its docket."  *Taylor v. JP Morgan Chase Bank, N.A.*, No. 3:15-CV-509-HBG, 2018 WL 5777497, at *3 (E.D. Tenn. Nov. 2, 2018).

Here, in the Fund's opposition to the Secretary's Motion for Preliminary Injunction, the Fund accuses the Secretary's investigator of (1) making "personal attacks" on Defendants; (2) "impl[ying] on numerous occasions that [Defendants] were crooks, partly because they were long time Teamster officials and must be dishonest;" and (3) being an "officious bureaucrat with nothing better to do than harass Teamsters."  (Doc. No. 75 at 3-4.)  While the Fund claims these allegations are relevant to the investigator's bias, the Fund has not demonstrated how the investigator's bias or any other aspect of these allegations attacking the conduct of the investigator are relevant to the Secretary's Motion for Preliminary Injunction.  Nor has the Fund provided any evidence in support of these accusations. Consequently, the Fund's gratuitous personal attacks on the investigator should be stricken.  *See Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (striking unsupported charges of racism against an attorney as "indefensible and wholly inappropriate").  In addition, the Court will *sua sponte* strike the Fund's opposition to the Secretary's Motion to Strike, as the Fund repeats the same unsupported and irrelevant allegations therein.

## V. Conclusion

For the reasons set forth above, Collova's Motion for Attorneys' Fees (Doc. No. 67) is DENIED.

The Secretary's Motion for Preliminary Injunction (Doc. No. 74) is GRANTED.  IT IS HEREBY ORDERED that:

a.  The Fleet Owners Insurance Fund (the "Fund"), its officers, agents, servants, employees, attorneys, and any persons acting in concert or participation with them, are enjoined from

using any of the Fund's assets to pay, advance, or reimburse any attorneys' fees or costs incurred, or expected to be incurred, by Robert Kavalec, Charles Alferio, Victor Collova, or the Board of Trustees of the Fleet Owners Insurance Fund in their defense of the Secretary of Labor's allegations of ERISA violations.

b. This Order shall apply, notwithstanding the Fund's Trust Agreement, or any other agreement or instrument, that purports to require the Fund to pay, advance, or reimburse such fees or costs.

c. This Order shall remain operative until modified or rescinded by the Court.

The Secretary's Motion to Strike (Doc. No. 82) is GRANTED. IT IS HEREBY ORDERED that the Fund's opposition to the Secretary's Motion for Preliminary Injunction (Doc. No. 75) and the Fund's opposition to the Secretary's Motion to Strike (Doc. No. 88) be STRICKEN from the record.

**IT IS SO ORDERED.**


       _s/Pamela A. Barker_           
        PAMELA A. BARKER
Date: July 14, 2020        U. S. DISTRICT JUDGE

24