**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **SECRETARY OF U.S. DEPARTMENT OF LABOR,** | **CASE NO. 1:19-CV-00968** |
| Plaintiff, | **JUDGE PAMELA A. BARKER** |
| -vs- | |
| **ROBERT KAVALEC, et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | |

This matter comes before the Court upon the Motion for Preliminary Injunction Enjoining Defendant Robert Kavalec's Continued Self-Dealing with Fund Assets, filed by the Plaintiff Secretary of Labor (the "Secretary"), United States Department of Labor on November 25, 2020. (Doc. No. 108.) Defendant Fleet Owners Insurance Fund (the "Fund") filed a Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction on January 7, 2021, to which the Secretary replied on January 14, 2021. (Doc. Nos. 113, 114.) For the following reasons, the Secretary's Motion for Preliminary Injunction is GRANTED.

**I. Background**

The Court sets forth the following relevant factual background from its July 14, 2020 Memorandum of Opinion and Order ("July 14, 2020 Order"):

On April 30, 2019, the Secretary of the United States Department of Labor ("the Secretary") filed a Complaint against Defendants Robert Kavalec ("Kavalec"), Charles Alferio ("Alferio"), Victor Collova ("Collova"), the Board of Trustees of the Fleet Owners Insurance Fund (the "Board"), and the Fleet Insurance Owners Fund ("the Fund") in this Court, setting forth claims for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. (Doc. No. 1.) The Secretary alleges that Kavalec, Alferio, Collova, and the Board (collectively, the "Fiduciary Defendants"), as fiduciaries of the Fund, violated several provisions of ERISA by, among other things, authorizing the payment of their own

>compensation and personal expenses by the Fund, allowing an ineligible person to participate in the Fund, and administering the Fund in violation of the Health Insurance Portability and Accountability Act ("HIPAA") and the Patient Protection and Affordable Care Act ("ACA"). (*Id.* at ¶¶ 22-96.) The Secretary seeks a variety of remedies pursuant to ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), such as an order permanently enjoining Defendants from serving as fiduciaries to ERISA-covered plans and the restoration to the Fund of all losses caused by Defendants' breaches of duty. (*Id.* at PageID# 22-23.)
>
>With respect to the Secretary's allegations of self-dealing in Counts 1 through 3 of the Complaint, the Secretary has submitted evidence that Kavalec, Alferio, and Collova each determined and/or approved their own compensation while serving as trustees of the Fund. Specifically, from January 1, 2012 to December 31, 2018, the Fund paid Kavalec more than $1.2 million in the form of wages, Fund health benefits, cashed-out vacation, and SEP IRA contributions. (Doc. No. 40-1 at ¶ 6.) These payments were made by checks drawn on the Fund's account, and over 90 percent of these checks were signed by Kavalec himself. (*Id.* at ¶ 7.) Kavalec has also admitted that trustees of the Fund determined their own salaries, and that he awarded himself a raise in October 2013. (Doc. No. 40-2 at 26-27.) . . .

(Doc. No. 92, PageID# 1433-34.)

On April 16, 2020, the Secretary filed a Motion for Preliminary Injunction to enjoin the Fund from paying the attorney fees of any of the Fiduciary Defendants, including Kavalec. (*Id.* at PageID# 1436.) On July 14, 2020, the Court enjoined the Fund from using any of the Fund's assets to pay, advance, or reimburse any attorneys' fees or costs incurred or expected to be incurred by Kavalec, Alferio, Collova, or the Fund's Board of Trustees in their defense of the Secretary's ERISA violation allegations. (*Id.* at PageID# 1455.)

Since the July 14, 2020 Order, however, Kavalec—the Fund's sole Trustee—continued to issue himself weekly paychecks in the gross amount of $1,730.77, or the net amount of $1,012.80. (Doc. No. 108, PageID# 1600; Doc. No. 108-3, Exhibit A-2.) On November 25, 2020, the Secretary filed the instant Motion seeking to enjoin Kavalec from using Fund assets to pay himself direct or indirect compensation. (Doc. No. 108.) On January 7, 2021, the Fund filed an Opposition to the

2

Secretary's Motion, to which the Secretary replied on January 14, 2021. (Doc. Nos. 113, 114.) Thus, the Motion is ripe and ready for resolution.

## II. Standard of Review

"In general, courts must examine four factors in deciding whether to grant a preliminary injunction: (1) whether the movant has demonstrated a substantial likelihood of success on the merits, (2) whether the movant will suffer irreparable injury absent injunction, (3) whether a preliminary injunction would cause substantial harm to others, and (4) whether the public interest will be served by an injunction." *Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529, 539-40 (6th Cir. 2017). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). However, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). In addition, "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573. "The party seeking the injunction must establish its case by clear and convincing evidence." *Draudt v. Wooster City Sch. Dist. Bd. of Educ.*, 246 F. Supp. 2d 820, 825 (N.D. Ohio 2003).

## III. Analysis

### A. Likelihood of Success on the Merits

First, the Court considers whether the Secretary "has demonstrated 'a strong likelihood of success on the merits.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). "In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than

3

a mere possibility of success." *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). Nonetheless, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.*

The Secretary asserts that the Court already concluded in its July 14, 2020 Order that the Secretary is likely to succeed on the merits of his self-dealing claims against Kavalec. (Doc. No. 108, PageID# 1601.) Therefore, based on the law-of-the-case doctrine, the Secretary asserts that he has likewise established likelihood of success on the merits here. (*Id.*)

In its Opposition, the Fund does not address the Secretary's contention that the Court's previous conclusion that the Secretary is likely to succeed on the underlying merits is sufficient to likewise establish likelihood of success on the merits in the instant Motion. Instead, the Fund makes several other arguments, including: that the Fund has not, and is not, violating ERISA § 406, 29 U.S.C. § 1106; that the Secretary's interpretation of ERISA § 406(a) is overbroad; that ERISA § 406(b) does not apply to Kavalec's salary because it does not address "services"; that the Secretary's interpretation of ERISA § 406(b) would lead to the unintended consequence that a fund fiduciary could never be an employee of the fund under any circumstances; that the Secretary has never offered any evidence that Kavalec's salary is excessive under ERISA § 408, 29 U.S.C. § 1108; and that Kavalec only receives a salary for his work as an administrator, not as a Trustee. (Doc. No. 113, PageID# 1733-35.)

In his Reply, the Secretary argues that the Fund fails to address the law-of-the-case doctrine, or "identify any reason, extraordinary or otherwise why the Court should disturb" its July 14, 2020 conclusion that the Secretary already demonstrated a strong likelihood of success on the merits of his

4

self-dealing claims against Kavalec. (Doc. No. 114, PageID# 1740.) The Secretary further contends that the Court already rejected many of the Fund's arguments in its July 14, 2020 Order. (*Id.* at PageID# 1741-42.) The Secretary also argues that the Fund fails to dispute any of the facts underlying the Secretary's Motion, other than the amount of Kavalec's salary. (*Id.* at PageID# 1743.) The Secretary argues that the precise amount of Kavalec's salary is irrelevant because "the violations depend solely on the fact that Kavalec" pays himself a salary at all. (*Id.*) The Court concludes that the Secretary has a strong likelihood of success on the underlying self-dealing claims against Kavalec.

The Court already considered once whether the Secretary demonstrated a strong likelihood of success on the merits of his self-dealing claim against Kavalec and concluded that the Secretary demonstrated a strong likelihood of success. (*See* Doc. No. 92, PageID# 1442.) In reaching that conclusion, the Court outlined the ERISA prohibitions against self-dealing and related caselaw interpreting ERISA §§ 406(b) and 408(b):

> With respect to the Secretary's self-dealing claims, ERISA § 406(b), 29 U.S.C. § 1106(b), provides that a plan fiduciary shall not "(1) deal with the assets of the plan in his own interest or for his own account," or "(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." 29 U.S.C. §§ 1106(b)(1)-(2). According to the Sixth Circuit, **this provision "contains an 'absolute bar against self dealing.'"** *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 750 (6th Cir. 2014) (quoting *Brock v. Hendershott*, 840 F.2d 339, 341 (6th Cir. 1988)). Fiduciaries "must either avoid the transactions described in Section 406(b) or cease serving in their capacity as fiduciaries, no matter how sincerely they may believe that such transactions will benefit the plan." *Sec'y of Dep't of Labor v. United Transp. Union ("UTU")*, No. 1:17 CV 923, 2020 WL 1611789, at *8 (N.D. Ohio Mar. 30, 2020) (quoting *Lowen v. Tower Asset Mgmt.*, 829 F.2d 1209, 1213 (2d Cir. 1987)).
>
> To illustrate, in a recent case from this District, ERISA plan trustees authorized a plan to pay administrative service fees to a union of which the trustees were also officers. *Id.* at *1-2. The court found that the trustees' actions were a "classic example of self-dealing" and violated ERISA § 406(b)(1) because, "as officers of the Union, Defendants had an interest in receiving payments from the Plan." *Id.* at *8; *see also*

5

> *Barboza v. California Ass'n of Prof'l Firefighters*, 799 F.3d 1257, 1270 (9th Cir. 2015) ("CAISI is a fiduciary that paid its own fees from Plan assets, and thus engaged in a prohibited transaction under 29 U.S.C. § 1106(b)(1).").

(*Id.* at PageID# 1442-43, emphasis added.) The Court, after considering the Sixth Circuit's "absolute bar" against ERISA fiduciary self-dealing concluded:

> In this case, the Secretary has submitted evidence that Kavalec, Alferio, and Collova determined and/or approved their own compensation from the Fund while they served as trustees for the Fund, including signing their own checks drawn on the Fund's account. (Doc. No. 40-1 at ¶¶ 6-13; Doc. No. 40-2 at 26-27.) **Defendants do not dispute this evidence.** Thus, the Secretary has established a strong likelihood of success of proving that the Fiduciary Defendants engaged in self-dealing by transferring plan assets directly to themselves, and, therefore, that the Fiduciary Defendants engaged in prohibited transactions under ERISA § 406(b).

(*Id.* at PageID# 1443, emphasis added.) Here, the Secretary submitted evidence that Kavalec, a Fund fiduciary, has approved and paid his own salary from Fund assets since at least January 1, 2019 through October 9, 2020, including by signing his own checks drawn on the Fund's account. (*See* Doc Nos. 108-2, 108-3.) Like last time, the Fund does not dispute this evidence. Thus, it appears that Kavalec, a Fund fiduciary, engaged in conduct likely to violate ERISA § 406(b)(1) when he set, approved, and paid his own salary from Fund assets. The Court concludes that the Secretary has established a strong likelihood of success of proving that Kavalec engaged in self-dealing by transferring plan assets directly to himself, and therefore, that Kavalec engaged in prohibited transactions under ERISA § 406(b).

None of the Fund's arguments as to why Kavalec's actions are permissible under ERISA are persuasive. First, the Fund argues that ERISA § 406(a) is inapplicable. (Doc. No. 113, PageID# 1733.) The Fund is correct, but this does little to advance the Fund's argument that the Secretary cannot establish a likelihood of success on the merits of the self-dealing claim against Kavalec under ERISA § 406(b). As discussed above, the Fund does not dispute that Kavalec has continued to pay

6

himself a salary from Fund assets for his administrative services. (Doc. No. 113, PageID# 1735.) According to the Sixth Circuit, ERISA § 406(b)(1) is an absolute bar against fiduciary self-dealing. *See Hi-Lex Controls*, 751 F.3d at 750. Further, the Sixth Circuit has held that ERISA § 408(b)(2)'s and (c)(2)'s "reasonable compensation" exceptions do not apply to transactions prohibited by ERISA § 406(b). *Id.* Therefore, it is irrelevant whether Kavalec's salary is reasonable or paid only in exchange for his work as administrator. ERISA § 406(b)(1) bars Kavalec, as a Fund fiduciary, from writing checks for Fund assets to himself. Moreover, the Court is not persuaded by the Fund's argument that the IRS "accepted and approved" the Fund's structure for the same reasons addressed in its July 14, 2020 Order, namely that the Fund offers no evidence that Kavalec or the Fund sought or received an exemption that would permit Kavalec to engage in conduct that might otherwise violate ERISA § 406(b).

Accordingly, the Court concludes that the Secretary has established a strong likelihood of success on its claims that Kavalec violated ERISA by engaging in prohibited self-dealing transactions.

**B.       Irreparable Injury**

"[T]he second factor that a court must consider when deciding whether to issue a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction." *Certified Restoration*, 511 F.3d at 550. The Secretary argues that a preliminary injunction is necessary to prevent irreparable harm to the Fund and its participants because Kavalec has already harmed the fund by transferring over $1.3 million in Fund assets and continues to harm the Fund each day he transfers more Fund assets to himself, thereby depleting Fund assets for participants' claims. (Doc. No. 108, PageID# 1602.) The Fund does not explicitly address the second factor but argues that if

Kavalec is "fired by the Court," it will delay the processing of the remaining claims and may cause the Fund to incur additional expense. (Doc. No. 113, PageID# 1736.) The Court concludes the Secretary has established that a preliminary injunction is necessary to prevent irreparable harm.

Irreparable harm may exist "where the facts show that the final equitable relief may be uncollectible." *Transamerica Ins. Fin. Corp. v. N. Am. Trucking Ass'n, Inc.*, 937 F. Supp. 630, 634 (W.D. Ky. 1996) (citing *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 97 (6th Cir. 1982)). In its July 14, 2020 Order, the Court noted that evidence submitted in April 2020 indicated that the Fund's estimated unpaid claims exceeded its assets. (*See* Doc. No. 92, PageID# 1451; Doc. No. 70-3, PageID# 1237.) According to the Fund, as of January 2021, only approximately $400,000 in Fund assets remain. (Doc. No. 113, PageID# 1736.) Further, Kavalec has previously conceded that he would be unable to restore his previously paid wages to the Fund if ordered to do so. (*See* Doc. No. 43, PageID# 879.) Consequently, it is unlikely that the Fund would ever recover Kavalec's salary payments for the benefit of Fund participants. This would irreparably harm Fund participants who would not receive full payment on their claims and would render uncollectible the final equitable relief sought by the Secretary, the full restitution of the Fund's losses. Accordingly, this factor favors the issuance of a preliminary injunction.

### C. Harm to Others

Next, the Court must consider "whether a preliminary injunction would cause substantial harm to others." *Flight Options*, 863 F.3d at 540. The Fund argues that granting the preliminary injunction will harm the Fund participants because the process of administering the final claims "is within a few months of being completed," but granting the preliminary injunction "risks paying any legitimate claims" that may remain. (Doc. No. 113, PageID# 1736.) The Secretary responds that the

Fund fails to explain how enjoining Kavalec from self-dealing will harm the Fund or its participants. (Doc. No. 114, PageID# 1745.) Moreover, the Secretary argues that the Court should view the Fund's claim that nearly all claims are nearly completed "with extreme skepticism," given the Fund's "prior unmet assurances." (*Id.* at PageID# 1744.) The Secretary also argues that the Fund's contention that Kavalec may suffer harm if he is expected to administer the Fund without compensation "turns ERISA on its head." (*Id.*) Finally, the Secretary argues that the Fund establishes a "false dilemma" in its Opposition, with the Fund's suggestion that the Court must either permit Kavalec to continue paying himself a salary to administer the Fund, or else leave the Fund with no one in charge. (*Id.* at PageID# 1746.) The Secretary contends that, upon Kavalec's resignation, the Secretary will propose a "qualified independent fiduciary for appointment by the Court," which would prevent further harm to the Fund. (*Id.*)

The Court concludes that a preliminary injunction would not cause substantial harm to others. First, the Fund offers no support for its argument that granting the instant Motion would "risk" the payment of "legitimate claims." As it stands now, the Fund's assets continue to dwindle, with no verification as to how many claims remain and no real indication as to how long it will take to administer them. Second, to the extent that the Fund's assertion that it is unreasonable to expect Kavalec to perform the Fund's administrative work without compensation can be construed as an argument that granting the preliminary injunction will harm others, the Court is not persuaded. (*See* Doc. No. 113, PageID# 1732.) The Fund could have hired an administrator who was *not* a Fund fiduciary. The Court is not persuaded that the Fund could not find anyone else willing to perform the Fund's administrative work. (*Id.* at PageID# 1736.) Instead, Kavalec, the sole Fund fiduciary, chose to pay himself a salary from the Fund's assets. As discussed above, this conduct likely violates

9

ERISA § 406(b)(1), and any harm Kavalec may suffer is outweighed by the harm to the Fund's participants. Kavalec has a choice. He may either choose to continue to serve as a Fund trustee without paying himself a salary from Fund assets, or he may resign from his role as a Fund trustee because, as the Fund asserts, Kavalec cannot be expected to work for free. (*Id.* at PageID# 1732.) If Kavalec chooses to resign from his role as trustee, the Court is satisfied that, as the Secretary suggests, it can appoint a qualified, independent fiduciary to oversee the remaining work of the Fund for the benefit of the Fund and its participants. (Doc. No. 114, PageID# 1746.) Thus, this factor provides additional support for the granting of a preliminary injunction.

### D. Public Interest

The fourth and final factor courts must consider when granting a preliminary injunction is "whether the public interest will be served by an injunction." *Flight Options*, 863 F.3d at 540. The Secretary argues that granting its Motion is in the public interest for the reasons the Court previously articulated in its July 14, 2020 Order, namely that granting a preliminary injunction will advance ERISA's policy objectives. (Doc. No. 108, PageID# 1603.) In response, the Fund only asserts that granting the Motion will "deplete the Fund assets faster than continuing with the present process." The Court agrees with the Secretary and concludes that this factor favors granting a preliminary injunction. In passing ERISA into law, Congress determined that employee benefit plans are "affected with a national public interest," and that it was "desirable in the interests of employees and their beneficiaries" that Congress implement "minimum standards" to assure "the equitable character of such plans and their financial soundness." 29 U.S.C. § 1001(a). Granting the preliminary injunction will advance ERISA's stated policy objectives of preventing misuse of plan funds and

10

protecting participants' benefits. Accordingly, the public interest weighs in favor of granting the Secretary's Motion for Preliminary Injunction.

Because all four factors favor the issuance of a preliminary injunction, the Court will grant the Secretary's Motion for Preliminary Injunction enjoining Kavalec from paying himself direct or indirect compensation from the assets of the Fund.

**IV.     Conclusion**

For the reasons stated above, the Secretary's Motion for Preliminary Injunction (Doc. No. 108) is GRANTED.  IT IS HEREBY ORDERED that:

    a. Defendant Robert Kavalec is enjoined from using any of the Fund's assets to pay himself, either directly or indirectly, a salary or other compensation.

    b. This Order shall remain operative until modified or rescinded by the Court.

**IT IS SO ORDERED.**

Date:  January 25, 2021

   *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE